IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,**      :
                           :
        **Plaintiff**          :      **CIVIL NO. 1:CV-09-01953**
                           :
**v.**                          :      **(Judge Rambo)**
                           :
**B.A. BLEDSOE,** *et al.*,        :
                           :
        **Defendants**        :

# M E M O R A N D U M

Plaintiff Kareem Hassan Milhouse ("Milhouse"), an inmate currently

incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-

Lewisburg"), filed this *Bivens*[1]-styled complaint against several Federal Bureau of

Prisons ("BOP") and USP-Lewisburg officials[2] (collectively, "Defendants") on

October 9, 2009, (Doc. 1), as amended November 2, 2009, (Doc. 6).  Milhouse

asserts several complaints about his designation to USP-Lewisburg's Special

Management Unit ("SMU") and the conditions in the SMU since designated there.

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001)).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as Defendants are B.A. Bledsoe, Warden; C. Miorana, Associate Warden; John Adami, Unit Manager; Scott Dodrill, Former Regional Director; Harrell G. Lappin, BOP Director; John Does 1-10; Kathleen M. Kenny, Assistant Director, BOP; Kristen Rear, Associate Warden; Estrada, Associate Warden; Ronnie R. Holt, Warden; Angela P. Dunbar, Associate Warden; Linsey, Unit Manager; T. Gubbiotti, Case Manager; D. Bassette, Counselor; and, Mark A. Render, D.H.O.

Before the court is a motion to dismiss and for summary judgment filed on behalf of Defendants.  (Doc. 32.)  Also before the court is a motion to submit additional pages to the amended complaint, filed by Milhouse.  (Doc. 26.)  For the reasons set forth below, the motion for summary judgment will be granted in part in favor of Defendants, denied in part, and Milhouse will be permitted to amend his complaint.

## I.    Background

### A.    Facts

The following facts are undisputed unless noted.  BOP Program Statement 5217.01, Special Management Units, provides, in pertinent part:

> Designation to a SMU may be considered for any sentenced inmate whose interaction requires greater management to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public, because the inmate meets any of the following criteria:
>
> - Participated in disruptive geographical group/gang-related activity.
> - Had a leadership role in disruptive geographical group/gang-related activity.
> - Has a history of serious and/or disruptive disciplinary infractions.
> - Committed any 100-level prohibited act, according to 28 CFR part 541, after being classified as a member of a Disruptive Group pursuant to 28 CFR part 524.
> - Participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation

2

> of a correctional facility.
> ■ Otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operation of Bureau facilities, or protection of the public.

(Doc. 39 ¶ 1) (quoting BOP Program Statement 5217.01, Special Management

Units, at 2).  That statement also provides, in pertinent part:

> a.  **Referral**.  If an inmate appears to satisfy any of the referral criteria above, the Unit Team may present a designation referral to the Warden.  The referral packet consists of a completed Request for Transfer/Application of Management Variable (EMS-A409), copies of pertinent Special Investigative Supervisor reports and incident reports, and a cover memorandum to the Warden summarizing the rationale for referral for SMU designation.  If the Warden approves the referral, it is submitted to the Regional Director.  The packet may be submitted electronically at all stages.  The Unit Team will be notified if the Warden denies the referral.
>
> b.  **Hearing**.  If the Regional Director determines that sufficient evidence exists to convene a hearing, the Regional Director appoints a Hearing Administrator to conduct a hearing into whether the inmate meets the criteria for SMU designation.  The Hearing Administrator will have been trained and certified as a Discipline Hearing Officer [("DHO")], will be an impartial decision-maker, and will not have been personally involved as a witness or victim in any relevant disciplinary action involving that inmate.
>
> * * *
>
> (1) **Pre-Hearing Notice**.  The Hearing Administrator completes the form BP-A0935, *Notice to Inmate: Hearing Referral for Designation to a Special Management Unit* . . . and sends it to the inmate's current institution.  Unit team staff provide the inmate with a copy of the Notice at least 24 hours before the hearing, and document

3

delivery to the inmate.

* * *

(2) **Inmate Appearance and Evidence**.  The inmate has the
opportunity to appear at the hearing, make an oral statement, and
present documentary evidence and written witness statements, except
where contrary to the safety, security, or orderly operation of Bureau
facilities, or protection of the public.

* * *

c.  **Post-Hearing Findings and Decision**.  The Hearing
Administrator considers whether, based on information obtained
during the referral process and presented at the hearing, the inmate
meets the criteria for the SMU program.  The Hearing Administrator
prepares the form BP-A0936, *Hearing Administrator's Report on
Referral for Designation to a Special Management Unit* (available on
Sallyport) and provides it to the Regional Director.  The Report
provides a detailed explanation of the reasons for the Hearing
Administrator's findings, but does not include information that would
jeopardize the safety, security, or orderly operation of correctional
facilities, or protection of the public.

The Regional Director considers whether, based on the Hearing
Administrator's findings, the SMU referral is necessary to ensure the
safety, security, or orderly operation of Bureau facilities, or protection
of the public.  The Regional Director includes a recommendation on
the Report and forwards it to the Designation and Sentence
Computation Center (DSCC).

(Doc. 39 ¶ 9) (quoting BOP Program Statement 5217.01, Special Management

Units, at 2-3).

In Milhouse's case, his SMU referral documentation, dated February 24,

2009, referenced twelve prior incident reports, including, *inter alia*, "Using

4

Martial Arts," "Destroying Government Property over $100," "Interfering with Security Devices," and "Engaging in Sexual Acts." (Doc. 39 ¶ 2; Doc. 38-2, Attach. 3, Notice to Inmate: Hearing Referral for Designation to a Special Management Unit.) In his opposition to Defendants' statement of material facts, Milhouse asserts that these incident reports should not have been considered in the SMU referral documentation because he received them while he was a pre-trial detainee at the Federal Detention Center in Philadelphia ("FDC-Philadelphia"). (Doc. 42 at 1.) In support, he cites BOP Program Statement 5217.01, which states with respect to "Pretrial/Holdover/Detainee Procedures" that the statement "applies only to sentenced inmates." (*Id*.) (citing BOP Program Statement 5217.01, Special Management Units, at 1).

The SMU referral also included information that Milhouse had sent threatening correspondence to two federal judges while in federal custody. (Doc. 39 ¶ 3; Doc. 38-2 at 31.) In addition, the referral referenced an incident which occurred in July 2006[3] while Milhouse was incarcerated at FDC-Philadelphia. (Doc. 39 ¶ 4; Doc. 38-2 at 31.) Milhouse was in a proffer room with his attorney at the William J. Green Federal Building in Philadelphia, when he showed her a razor

---

[3] While the SMU referral references a date for this incident as July 2007, (Doc. 38-2 at 31), the incident report Milhouse attaches to his opposition to Defendants' statement of material facts references a date of July 2006, (Doc. 42 at 5-6.) For purposes of disposition of the instant motion, the court will reference the July 2006 date.

blade and threatened to cut her throat if she screamed.  (Doc. 39 ¶ 5; Doc. 38-2 at

31.)  He told the attorney that he "had not had sex in a while, wanted to have sex,"

and held the razor blade to her neck.  (Doc. 39 ¶ 6; Doc. 38-2 at 31.)  The attorney

yelled, and Milhouse grabbed her and threw her over the table, causing her injury.

(Doc. 39 ¶ 7; Doc. 38-2 at 31.)  As law enforcement entered the room, Milhouse

tried to break the window with his shoulder and then picked up a chair and tried

again to smash the window.  (Doc. 39 ¶ 8; Doc. 38-2 at 31.)  In his opposition to

Defendants' statement of material facts, Milhouse asserts that this incident was

only alleged, that none of the facts were substantiated, and in fact the incident

report was expunged in November 2007.  (Doc. 42 at 2.)  In materials attached to

his opposition, it is apparent that the incident report was expunged on November

28, 2007 (Doc. 42 at 4); however, the materials also indicate that the report was

expunged because Milhouse was charged criminally by the FBI for his attempted

escape and assaultive behavior.  (*Id*. at 5.)

A hearing regarding Milhouse's SMU referral was scheduled and Milhouse

was notified of such.  (Doc. 39 ¶¶ 10, 11; Doc. 38-2 at 30-40.)  On February 25,

2009, DHO Renda conducted the hearing, with Milhouse present.  (Doc. 39 ¶¶ 12,

13; Doc. 38-2 at 36-40.)  Milhouse was given the opportunity to make a statement,

which was documented by DHO Renda as follows:

Milhouse stated for the record: "I don't have all the evidence I can present.  Second thing I couldn't consult with my attorney.  My behavior doesn't support this referral.  I worked in UNICOR.  I haven't had a misconduct . . . except I have a civil suit at FDC Philadelphia for misconduct.  They said I destroyed government property.  They put us in the cell for the light hanging off.  The officer put us in the cell.  They still found me guilty.  They found me guilty of pressing the duress button.  I had four cellies.  They said I'm a threat to the general population.  I know how to use the administrative remedy [form] and seek justice through the courts.  I know that.  None of it adds up.  A lot of stuff happened from retaliation.  They kept me in the hole for two months without telling me.  I threatened the judge but nobody showed me any documentation.  It's about my constitutional violations.  My access to the court is being blocked.

(Doc. 39 ¶ 14; Doc. 38-2 at 36.)  In his report signed on February 26, 2009, DHO

Renda found that Milhouse "meets the following criteria for designation to a

Special Management Unit."  (Doc. 39 ¶ 15; Doc. 38-2 at 37.)  Specifically, DHO

Renda found that Milhouse met two of the referral criteria: "has a history of serious

and disruptive disciplinary infractions," and "[t]he inmate otherwise participated in

or was associated with activity such that greater management of the inmate's

interaction with other persons is necessary to ensure the safety, security, or orderly

operation of Bureau facilities, or protection of the public."  (Doc. 39 ¶ 16; Doc. 38-

2 at 37.)  On February 27, 2009, a non-defendant BOP staff member acting for the

Regional Director concurred in the findings and recommended that Milhouse be

designated to the SMU.  (Doc. 39 ¶ 18; Doc. 38-2 at 39.)  A DSCC staff member

approved Milhouse's designation to the SMU on March 27, 2009.  (Doc. 39 ¶ 19;

Doc. 38-2 at 39.)  On April 5, 2009, Milhouse signed the form indicating that he was provided with a copy of the SMU referral and DHO report.  (Doc. 39 ¶ 20; Doc. 38-2 at 39.)

## B.      Procedural History

Milhouse filed his original complaint on October 9, 2009.  (Doc. 1.) However, prior to service of the original complaint, Milhouse filed an amended complaint on November 2, 2009.  (Doc. 6.)  By order dated December 2, 2009, the court directed service of the amended complaint on the Defendants named therein. (Doc. 10.)  Defendants filed the instant motion to dismiss and for summary judgment on April 6, 2010.  (Doc. 32.)  Supporting and responsive briefing have been filed.  (*See* Docs. 38, 41, 56, 59.)  Thus, the instant motion is ripe for disposition.

## II.     Standards of Review

### A.      Motion to Dismiss

Defendants has filed a motion which, in part, seeks dismissal of the complaint on the grounds that Milhouse's complaint fails to state a claim upon

which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss

under Rule 12(b)(6) because it is accompanied by evidentiary documents outside

the pleadings contravening Milhouse's claims.  Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the
> pleadings are presented to and not excluded by the court, the motion
> must be treated as one for summary judgment under Rule 56.  All
> parties must be given a reasonable opportunity to present all the
> material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  The court will not exclude the evidentiary materials

accompanying Defendants' motion to dismiss because Milhouse has also been

given a reasonable opportunity to present material relevant to the motion.  Thus,

Defendants' motion to dismiss and for summary judgment shall be treated solely as

seeking summary judgment.

## B.    <u>Motion for Summary Judgment</u>

Summary judgment is proper when "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32

(3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the

suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis

that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   Discussion

In their motion for summary judgment, Defendants assert that Milhouse's

claim with respect to designation to the SMU does not set forth a constitutional

violation and thus fails to state a claim.  Further, Defendants contend that

Milhouse's general allegations with respect to the conditions of the SMU are

insufficient to state a constitutional claim for which relief may be granted.[4]

Defendants also contend that Milhouse has failed to state claims of denial of access

to the courts, retaliation, and denial of freedom of religion.  The court will address

these issues in turn.

## A.     Designation to the SMU

Milhouse alleges that he has been made to suffer "harsh and inhumane

conditions" when he was referred and designated to the SMU.  (Doc. 6 at 9.)

Further, he complains that the BOP impermissibly referred him to the SMU based

on "previously adjudicated incident report histories."  (*Id.*)  In their brief in support

of the instant motion, Defendants counter that Milhouse's placement in the SMU

---

[4] To the extent that Milhouse sets forth any claims on behalf of other inmates, those claims will be dismissed because it is well-settled that *pro se* plaintiffs are not favored as representative parties in a class action since they generally cannot represent and protect the interests of the class fairly and adequately.  *Caputo v. Fauver*, 800 F. Supp. 168, 170 (D. N.J. 1992), *aff'd*, 995 F.2d 216 (3d Cir. 1993) (table decision) (stating that "[e]very court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action); *Cahn v. United States*, 269 F. Supp. 2d 537, 547 (D. N.J. 1992); *Whalen v. Wiley*, No. 06-809, 2007 WL 433340, at *2 (D. Col. Feb. 1, 2007) (finding that it is plain error to permit a *pro se* inmate litigant to represent fellow inmates).

does not implicate his due process rights. The court agrees with Defendants.

As stated by the Supreme Court, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). However, a due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations." *Id.* at 222. The Due Process Clause protects a prisoner's right to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 222-23 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Stated another way, a liberty interest arises from the Due Process Clause only where the conditions or degree of confinement to which the inmate is subjected are beyond the sentence imposed upon him or otherwise violate the Constitution. *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

In the instant case, Milhouse has produced no evidence demonstrating that he has been subjected to confinement that exceeded the sentence imposed upon him or otherwise violated the Constitution. The conditions Milhouse alleges in his

amended complaint are entirely consistent with the conditions in the SMU. *See infra*. Furthermore, he has produced no evidence or even argued that his transfer to the SMU somehow resulted in a loss of good conduct time credits or otherwise altered his sentence. These conclusions are consistent with prior holdings of this court that placement in the SMU does not give rise to atypical and significant hardships, and that it does not implicate due process of law. *See Smith v. Dodrill, et al.*, Civ. No. 4:07-cv-2295, 2009 WL 62175, at *4, 11-12 (M.D. Pa. Jan. 8, 2009); *Spencer v. Kelchner, et al.*, Civ. No. 3:06-cv-1099, 2007 WL 88084, at * 10 (M.D. Pa. Jan. 9, 2007); *Francis v. Dodrill, et al.*, Civ. No. 3:04-cv-1694, 2005 WL 2216582, at * 3-5 (M.D. Pa. Sept. 12, 2005); *Stotts v. Dodrill, et al.*, Civ. No. 3:04-cv-00043, slip op. at 8 (M.D. Pa. Feb. 7, 2005). Thus, Defendants are entitled to summary judgment on this claim.

Moreover, to the extent that Milhouse alleges that the SMU program operates under an unconstitutional BOP Program Statement that subjects him to atypical and significant hardship, his claim also fails. Inmates do not possess a liberty interest under the Due Process Clause to be classified in a facility of their choosing. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison

13

sentence."); *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995). The Bureau of Prisons retains sole discretion over where to place an inmate. 18 U.S.C. § 3621. However, as stated above, inmates do have a liberty interest in avoiding transfer to facilities where the conditions impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. This is not such a transfer. The conditions set forth by Milhouse and the conditions overall in the SMU are reasonable and proportionate to those in other prisons in the federal system and across the country, and do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life.

Furthermore, the undisputed facts establish that placement in the SMU program is not punitive in nature, but rather is designed to provide additional programming opportunities for inmates involved in disciplinary incidents. (Doc. 39 ¶¶ 1-8.) As found by this court, "[u]sing restrictions to promote prosocial behavior falls within the parameters of a sentence imposed by a court of law." *Francis*, 2005 WL 2216582, at * 5. Here, Defendants have shown that Milhouse was placed in the SMU because of his disciplinary history, specifically his multiple misconducts, threatening correspondence to federal judges, and an attempted escape and assaultive behavior for which he was indicted on criminal charges. (Doc. 39 ¶¶ 1-8.)

In opposition to the instant motion, Milhouse provides no evidence to refute this classification beyond simple denials. Further, his contention that he should not have been designated to the SMU because the incident reports used in his SMU referral were from a time when he was a pre-trial detainee does not have merit. The BOP program statement on SMUs states that only sentenced inmates may be designated to an SMU; it does not state that incident reports from a sentenced inmate's pre-trial detainee custody classification cannot be used. Because Milhouse was in fact a sentenced inmate at the time the SMU referral was made on February 24, 2009 and at the time he received the authorized SMU referral and DHO report on April 5, 2009, his designation to the SMU does not violate BOP policy or federal law.

Moreover, while Milhouse clearly prefers not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause. *See Mackey v. Strada*, Civ. No. 3:cv-06-0156, 2008 WL 4210468, at *5-6 (M.D. Pa. Sept. 9, 2008) (finding inmate's challenge to his transfer to the SMU program despite having committed no disciplinary violation does not implicate due process); *McKettrick v. Williamson*, Civ. No. 4:cv-06-0543, 2006 WL 1307929, at *3-9 (M.D. Pa. Mar. 22, 2006) (denying inmate's challenge to the lack of a BOP SMU policy without approved BOP standard or criteria as not implicating a liberty

interest).  Therefore, the court finds no genuine issue of material fact that Milhouse

has no liberty interest in avoiding placement in the SMU,[5] and summary judgment

will be granted in favor of Defendants.

**B.**     **Conditions in the SMU**

Milhouse makes several allegations with respect to the general conditions of

the SMU, construed here by the court as Eighth Amendment claims.  He further

sets forth an access to the courts claim, a retaliation claim, and a freedom of

religion claim.  The court will discuss first the Eighth Amendment claims,

followed by the remaining claims.

**1.**     **Living Conditions in the SMU**

The Eighth Amendment prohibition against cruel and unusual punishment

---

[5] To the extent that Milhouse claims that Defendants conspired to have him referred and designated to the SMU, he fails to state a claim.  In alleging a conspiracy claim,

> The plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out these objectives.  Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

*Flanagan v. Shiveley*, 783 F. Supp. 922, 928 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). In the instant case, Milhouse has not produced any evidence that creates a genuine issue of material fact that there was a conspiracy between any of the Defendants to have him impermissibly referred and designated to the SMU.  The bare accusations of conspiracy are not supported by the facts in the record, which do not contain any proof of an agreement between any of the Defendants.  Thus, Milhouse has failed to state a claim.

demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must 'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Tillery v. Owens*, 719 F. Supp. 1256, 1261 (W.D. Pa. 1989) (quoting *Rhodes*, 452 U.S. at 346). Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. *Rhodes*, 452 U.S. at 348.

To establish an Eighth Amendment claim, Milhouse must show that he has been deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997) (quoting *Young v. Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)). This includes showing that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions

and the "totality of the circumstances" as critical to a finding of cruel and

inhumane treatment. *Rhodes*, 452 U.S. at 362-63. Moreover, the focus must be on

the deprivation of a particular basic necessity. As explained by the United States

Supreme Court:

> *Some* conditions of confinement may establish an Eighth Amendment
> violation "in combination" when each would not do so alone, but only
> when they have a mutually enforcing effect that produces the
> deprivation of a single, identifiable human need such as food, warmth,
> or exercise - for example, a low cell temperature at night combined
> with a failure to issue blankets. To say that some prison conditions
> may interact in this fashion is a far cry from saying that all prison
> conditions are a seamless web for Eighth Amendment purposes.
> Nothing so amorphous as "overall conditions" can rise to the level of
> cruel and unusual punishment when no specific deprivation of single
> human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (citations omitted); *see also Tillery*

*v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be

considered, including "food, medical care, sanitation, control of vermin, lighting,

heating, ventilation, noise level, bedding, furniture, education and rehabilitation

programs, safety and security and staffing") (citing *Peterkin v. Jeffes*, 855 F.2d

1021, 1025-26 & n.7 (3d Cir. 1988)).

In addition to showing conditions that pose a significant risk of serious

harm, the inmate must show that the person or persons responsible for the

conditions of confinement acted with "a sufficiently culpable state of mind."

18

*Wilson*, 501 U.S. at 298. As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer*, 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id*. at 842.

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Rhodes*, 452 U.S. at 349 n.14)). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

In the present case, for the reasons that follow, the court concludes that there exists no genuine issue of material fact that the deprivations alleged by Milhouse with respect to the living conditions of the SMU constitute cruel and unusual

punishment.  Accordingly, the motion for summary judgment will be granted in favor of Defendants as to these Eighth Amendment claims.

### a.  Visitation

Milhouse claims that his constitutional rights have been violated with respect to limitations placed on contact visits.  In their brief in support of the instant motion, Defendants counter that Milhouse's visiting privileges have been suspended until January 14, 2014, due to multiple disciplinary infractions.[6] (Doc. 38 at 19; Doc. 38-2, Ex. 1 ¶ 4.)

Milhouse has no constitutional liberty interest in visitation.  *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  Likewise, there is no inherent right of friends and family to visit someone who is incarcerated.  *Flanagan v. Shiveley*, 783 F. Supp. 922, 934 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992).  Accordingly, prison officials have the discretion to impose restrictions upon visitation to address violations of prison rules or unacceptable physical contact between visitors. *Overton*, 539 U.S. at 131.  Here, because Milhouse has no protected right to visitation, he fails to state a claim.  Thus, summary judgment will be granted here in favor of Defendants.

---

[6] In his brief in opposition, Milhouse disputes the date on which the suspension of these privileges were given, but does not dispute the date on which that suspension ends.  (*See* Doc. 41 at 5.)

### b.  Telephone Privileges

Milhouse complains that SMU inmates are only allowed two fifteen-minute telephone calls per month and "no legal calls."  By contrast, Milhouse asserts, general population inmates are generally permitted 300 minutes of outgoing telephone calls per month.

In their brief in support of the instant motion, Defendants assert that Milhouse, by conceding that SMU inmates receive two calls per month, has failed to state a constitutional claim.  In support, they cite BOP policy on telephone privileges, which states, "Except as provided in this rule, the Warden shall permit an inmate who has not been restricted from telephone use as the result of a specific institutional disciplinary sanction to make at least one telephone call each month."  28 C.F.R. § 540.100(b).  Further, Defendants note that, as a result of multiple disciplinary restrictions, Milhouse's telephone privileges have been suspended until October 10, 2011.[7]  (Doc. 38-2, Ex. 1, at 3.)  Defendants also assert that legal calls are monitored pursuant to BOP policy in the SMU handbook, which states, "All legal calls require the approval of the Unit Team.  Unit Team Staff will set up and supervise legal calls."  (*Id*., Ex. 1, Attach. 1, at 8.)  Milhouse does not dispute

---

[7] Loss of telephone privileges is an acceptable form of inmate disciplinary sanctions. *See United States v. Colon*, 246 F. App'x 153, 155-56 (3d Cir. 2007) (finding 10 years' loss of phone privileges, "while severe, [is] not grossly disproportionate to a remedial goal").

any of Defendants' assertions here.[8]  Thus, there exists no genuine issue of material fact that Milhouse's restricted telephone privileges are constitutional, and Milhouse fails to state a claim.  Summary judgment will be granted here in favor of Defendants.

### c.    <u>Inmate Program and Work Assignments</u>

Milhouse complains that as a result of his designation to the SMU, he does not participate in group activities and programs, as well as prison employment. While Milhouse fails to specify what group activities and programs in which he desires to participate, the denial of prison programs does not constitute a condition of prison life which is cruel or unusual punishment.  "The failure of prison authorities to afford inmates rehabilitative programs does not constitute cruel and unusual punishment."  *Padgett v. Stein*, 406 F. Supp. 287, 296 (M.D. Pa. 1975). Further, it is well-settled that prisoners do not have a constitutionally protected right to prison employment.  *James v. Quinlan*, 866 F.2d 627, 629 (3d Cir. 1989); *Northrop v. Federal Bureau of Prisons*, Civ. No. 1:08-CV-0746, 2008 WL 5047792, at *6 n.7 (M.D. Pa. Nov. 24, 2008); *Vieux v. Smith*, Civ. No. 4:07-CV-299, 2007 WL 1650579, at *3 (M.D. Pa. June 5, 2007).  Here, because Milhouse

---

[8] In his brief in opposition, Milhouse disputes the date on which the suspension of these privileges were given, but does not dispute the date on which that suspension ends.  (*See* Doc. 41 at 5.)

has no protected right to prison programs or employment, he fails to state a claim. Thus, summary judgment will be granted here in favor of Defendants.

### d. Clothing and Food

In his amended complaint, Milhouse asserts that "[t]he clothing is dilapidated, most often the food is cold and missing items. Supplies aren't given out regularly." (Doc. 6 at 10.) This complaint, however, does not assert a violation of a constitutionally protected liberty interest.

In order to claim a valid liberty interest, a legitimate claim of entitlement to a benefit must exist, not a mere unilateral expectation. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972). Though the Fourteenth Amendment generally confers a liberty interest in receiving adequate food, shelter, clothing and medical treatment on persons in government custody, *see Youngberg v. Romeo*, 457 U.S. 307 (1982), the court is not aware of any standard, constitutional or otherwise, that guarantees prisoners with specific quality and quantities of food and clothing they desire. Rather, the law only instructs that BOP personnel provide "suitable" living arrangements for federal prisoners. *See* 18 U.S.C. § 4042; 28 C.F.R. § 547, 551. The conditions of "dilapidated" and "cold and missing items" simply do not evoke a constitutional violation here. Moreover, it is well-established that while the Eighth Amendment

directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349. To the extent that certain conditions are "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses against society. *Id*. at 347. Furthermore, even if Milhouse had a protected liberty interest in these alleged deprivations, his vague, conclusory allegations do not portray a situation where USP-Lewisburg officials violated his rights by acting outside the scope of their official discretion. *See Vitek v. Jones*, 445 U.S. 480, 488-91 (1980). Thus, Milhouse has failed to state a claim. Summary judgment will be granted here in favor of Defendants.

### e. <u>Inadequate Medical Care</u>

In his amended complaint, Milhouse generally asserts that prisoners are denied adequate medical care. (Doc. 6 at 10.) To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendants acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the

defendant's denial was sufficiently serious. *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Additionally, the plaintiff must make a "subjective" showing that defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).[9]

This test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*,

---

[9] The "deliberate indifference to serious medical needs" standard is obviously met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White v. Napolean*, 897 F.2d 103, 108-10 (3d Cir. 1990).

In the instant case, Milhouse makes only a general statement that prisoners are denied adequate and effective medical care. (Doc. 6 at 10.) In fact, the only factual averments he makes are with respect to another inmate allegedly not receiving proper psychological care prior to committing suicide. (*Id.*) In his brief in opposition to the instant motion, he generally asserts that unnamed officials do not respond to his sick call requests, which have no time frame. (Doc. 41 at 7.) Because he fails to assert any specific occurrences as to any Defendant with respect to his own alleged inadequate medical care, Milhouse has failed to state a claim. Summary judgment will be granted here in favor of Defendants.

### f.     Use of Restraints

In his amended complaint, Milhouse makes a general allegation that "prisoners are put into ambulatory restraints and placed into dry cells arbitrarily." (Doc. 6 at 11.) Construing this claim as an excessive use of force claim, the court concludes that Milhouse has failed to state a claim.

In order for a prisoner to state an Eighth Amendment claim for the excessive

use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321). The prisoner need not show significant injury to state an excessive use of force claim. *Hudson*, 503 U.S. at 8, 10. However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de mimimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (citations omitted).

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the

discretion of prison administrators." *Whitley*, 475 U.S. at 321 (quoting *Rhodes*, 452 U.S. at 349 n.14). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

Examining the circumstances of this case under the *Whitley* factors, the court concludes that a reasonable trier of fact would conclude that Milhouse has failed to set forth a claim of excessive force with respect to the use of restraints in the SMU. Milhouse has not presented any evidence that would establish there is an issue of material fact as to whether Defendants acted to "maliciously and sadistically cause harm" to him when restraints were used upon him. *Hudson*, 503 U.S. at 7. In his opposition to the instant motion, Milhouse simply asserts, without any supporting evidence, that force is used as intimidation rather than applied in good faith. (Doc. 41 at 7.) Moreover, Milhouse has failed to provide any date or time for the use of restraints upon him, and any personal involvement by any of the Defendants. Thus, the court finds that Milhouse has failed to set forth a Eighth Amendment

claim with respect to the use of restraints, and summary judgment will be granted here in favor of Defendants.

### g. **May 14, 2009 Alleged Assault**

In his amended complaint, Milhouse asserts that he was the victim of a "vicious assault on May 14, 2009, and the object of several prison officials rage absent provocation." (Doc. 6 at 11.) He does not reference any specific involvement by any of the named Defendants. However, any claims arising from this alleged incident are currently being litigated in *Milhouse v. Jordan, et al.*, Civ. No. 1:CV-09-1365. In fact, in that case Milhouse raises this very issue of whether the Defendants acted with deliberate indifference towards Milhouse in relation to the alleged May 14, 2009 incident. As this claim is being actively litigated under *Milhouse v. Jordan, et al.*, Civ. No. 1:CV-09-1365, the claim here will be dismissed as duplicative.

### C. **Access to the Courts**

In his amended complaint, Milhouse asserts that his "legal mail has been tampered with on several occasions resulting in direct appeal rehearing being denied, the courts not receiving mail and administrative remedy appeals, as well as mail to my attorney. Stamps were defaced with black magic marker to sabotage mail from reaching its destinations." (Doc. 6 at 15.) For the reasons set forth

below, the court will deny summary judgment on this claim and allow Milhouse to file an amended complaint with respect to instances set forth in his brief in opposition to the instant motion.

"[P]risoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to state a claim for denial of this right, Milhouse must plead that he has suffered an "actual injury" arising from the challenged conduct of defendants. *See Lewis v. Casey*, 518 U.S. 343, 349-50 (1996).

As stated above, Milhouse claims his access to the courts was hindered in several ways. In their brief in support of the instant motion, Defendants counter that Milhouse has failed to provide any details regarding a date or case which would demonstrate "actual injury" with specificity. (*See* Doc. 38 at 20) (citing *Gordon v. Morton*, 131 F. App'x 797, 798 (3d Cir. 2005) (observing that an inmate's claim against correctional officers for alleged deprivation of access to the courts failed where he did not demonstrate actual injury)). In his brief in opposition to the instant motion, Milhouse specifies three instances in which his access to the courts was hindered. First, he claims that on June 14, 2009, he gave the block officer outgoing legal mail addressed to the Third Circuit Court of Appeals with a petition for rehearing in his appeal before that Court under *United*

30

*States v. Milhouse*, Nos. 08-1326/1398, but that mail never reach the Court and he did not discover that he missed the deadline for filing such a petition until August 9, 2009. (Doc. 41 at 6.) Second, he claims that in August 2009 he mailed legal mail to his attorney and to the BOP's Central Office, but both pieces of mail were returned to him opened and the stamps were "defaced with a black marker." (*Id*.) Third, he claims that on September 3, 2009, he gave Officer Scott D. Blue outgoing administrative remedy appeals addressed to the BOP's Northeast Regional Office and Central Offices, but the appeals were denied on September 28, 2009 as untimely. (*Id*.) Defendants did not respond to Milhouse's specific allegations in their reply to the instant motion. (*See* Doc. 59.) Without a response to Milhouse's allegations, the court is not inclined to grant summary judgment in favor of Defendants. Thus, the court will deny Defendants' motion here and allow Milhouse to reassert the claims of denial of access to the courts as to the three instances specified in his brief in opposition (*see* Doc. 41 at 6) in an amended complaint.

### D. **Retaliation**

In his amended complaint, Milhouse claims that he has been threatened and subjected to retaliation for exercising federally protected rights. (Doc. 6 at 11.) In their brief in support of the instant motion, Defendants counter that Milhouse has

failed to assert any specific instances or factual averments as to any Defendants sufficient to demonstrate a plausible claim for relief. (Doc. 38 at 26.) In his brief in opposition, Milhouse claims that it is his transfer to the SMU that was done in retaliation for filing grievances. (Doc. 41 at 8.)

To establish a claim of retaliation, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he engaged in a constitutionally protected activity. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Health Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between

the two events.[10] *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).

Turning to the allegations in this case, the court finds that Milhouse has met the first requirement of a retaliation claim. Courts have held that the filing of grievances is protected under the First Amendment right to petition the government for redress of grievances. *See, e.g., Booth v. King*, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004); *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520 (E.D. Pa. 2002). Hence, Milhouse's conduct was constitutionally protected. As to the remaining elements of a retaliation claim, Milhouse has provided no evidence whatsoever to support his claim that he was transferred to the SMU in retaliation for filing grievances. To the contrary, Defendants have presented evidence that Milhouse was transferred to the SMU based on his disciplinary history only. (*See supra* pp. 11-16.) As the court has already agreed with Defendants that Milhouse's placement in the SMU was based on his disciplinary history, and Milhouse presents no evidence that his transfer was instead in retaliation for filing grievances, the court finds that Milhouse has failed to state a claim of retaliation. Thus, the motion for summary judgment will be granted here in favor of Defendants.

### E.     Freedom of Religion Claim

---

[10] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

In his amended complaint, Milhouse asserts generally that he has been denied the "thorough practice of religious freedom." (Doc. 6 at 15.) In their brief in support of the instant motion, Defendants contend that he has failed to set forth any specific instances or factual averments to demonstrate a plausible claim for relief. (Doc. 38 at 27.) In his brief in opposition, however, Milhouse claims that he has been prevented from attending religious services. (Doc. 41 at 8.) As Defendants have not responded to this allegation, the court will grant Milhouse leave to reassert this claim in an amended complaint.

### F.    Milhouse's Motion to Supplement the Amended Complaint

Milhouse has filed a motion to supplement his amended complaint. (Doc. 26.) However, as set forth above, the court is permitting Milhouse to file an amended complaint as to the remaining issues related to his access to the courts claims and freedom of religion claim. As such, the court will deem moot Milhouse's motion to supplement the amended complaint with additional pages.

Milhouse is reminded that in preparing his amended complaint, among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.*; *see also Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005).

Milhouse is also reminded that his amended complaint must sufficiently allege each Defendant's personal involvement or state that any conduct attributable to each of them amounted to a violation of his constitutional rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (in order to state a viable claim under § 1983, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim). To meet the standards set forth in Rule 8, Milhouse's amended complaint must at least contain a modicum of factual specificity, identifying the Defendants and the particular conduct of the Defendants purported to have harmed him. "A complaint which contains a bare bones allegation that a wrong occurred and which does not plead any of the facts giving rise to the injury, does not provide adequate notice." *Purveegiin v. Pike County Corr. Facility*, No. 3:CV-06-0300, 2006 WL 1620219 (M.D. Pa. June 6, 2006).

In addition, Milhouse is advised that the "amended complaint must be

complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Additionally, it must specify the existence of actions by Defendants which have resulted in constitutional deprivations. *See, e.g.*, *Rizzo v. Goode*, 423 U.S. 362, 370–73 (1976).

Further, Milhouse's amended complaint should be limited with respect to only those Defendants and claims that arise out of the same transaction or occurrence or series of transactions or occurrences and that have questions of law or fact common to all Defendants and claims. Milhouse should file separate actions as to any Defendants and claims that do not share common legal and factual questions and that do not arise out of the same transactions or occurrences.

Milhouse is advised that if he fails, within the applicable time period, to file an amended complaint adhering to the standards set forth above, the remaining claims will be dismissed for failure to state a claim.

## IV.    Conclusion

For the reasons set forth herein, the motion for summary judgment will be granted in favor of Defendants with respect to Milhouse's claims relating to his designation to the SMU and the resulting living conditions in the SMU. The

motion will also be granted as to the retaliation claim. However, the motion for summary judgment will be denied as to Milhouse's claims of denial of access to the courts and of freedom of religion, and Milhouse will be given leave to file an amended complaint relating to those issues.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated: January 31, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE,                    :
                                            :
            Plaintiff                       :        CIVIL NO. 1:CV-09-01953
                                            :
      v.                                    :        (Judge Rambo)
                                            :
B.A. BLEDSOE, *et al.*,                     :
                                            :
            Defendants                      :

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) Defendants' motion for summary judgment (Doc. 32) is **GRANTED** with

respect to Plaintiff's claims relating to designation to the SMU.

2) Defendants' motion for summary judgment (Doc. 32) is **GRANTED** with

respect to Plaintiff's Eighth Amendment claims relating to the living conditions of

the SMU.

3) Defendants' motion for summary judgment (Doc. 32) is **GRANTED** as to

Plaintiff's retaliation claim.

4) Defendants' motion for summary judgment (Doc. 32) is **DENIED** as to

Plaintiff's access to the courts claims.

5) Defendants' motion for summary judgment (Doc. 32) is **DENIED** as to Plaintiff's freedom of religion claim.

6) Plaintiff shall file an amended complaint relating to his access to the courts claims and his freedom of religion claim in accordance with the accompanying memorandum, on or before **February 28, 2011**.

7) Plaintiff's motion to supplement the amended complaint with additional pages (Doc. 26) is **DEEMED MOOT**.

8) The Clerk of Court shall defer the entry of the partial grant of summary judgment above until the conclusion of this case.

                                _s/Sylvia H. Rambo_
                                United States District Judge

Dated:  January 31, 2011.