IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,**          :
                                     :
          **Plaintiff**              :          CIVIL NO. 1:CV-09-01953
                                     :
**v.**                               :          **(Judge Rambo)**
                                     :
**B.A. BLEDSOE,** *et al.,*          :
                                     :
          **Defendants**             :

# M E M O R A N D U M

Plaintiff Kareem Hassan Milhouse ("Milhouse"), an inmate currently

incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-

Lewisburg"), filed this *Bivens*[1]-styled complaint against several Federal Bureau of

Prisons ("BOP") and USP-Lewisburg officials[2] (collectively, "Defendants") on

October 9, 2009, (Doc. 1), as amended April 20, 2011,[3] (Doc. 96).  Milhouse

---

[1] *Bivens* actions are the federal counterpart to § 1983 claims brought against state officials. *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) (citing *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).  "[C]ourts have generally relied upon the principles developed in the case law applying section 1983 to establish the outer perimeters of a *Bivens* claim against federal officials."  *Schrob v. Catterson*, 948 F.2d 1402, 1409 (3d Cir. 1991).

[2] Named as Defendants are B.A. Bledsoe, Warden; C. Miorana, Associate Warden; John Adami, Unit Manager; Scott Dodrill, Former Regional Director; Harrell G. Lappin, BOP Director; John Does 1-10; Kathleen M. Kenny, Assistant Director, BOP; Kristen Rear, Associate Warden; Estrada, Associate Warden; Ronnie R. Holt, Warden; Angela P. Dunbar, Associate Warden; Linsey, Unit Manager; T. Gubbiotti, Case Manager; D. Bassette, Counselor; and, Mark A. Render, D.H.O.

[3] As explained more fully in the procedural history, Part I.C, the court previously considered a motion for summary judgment filed by Defendants in a memorandum and order dated January 31, 2011.  (Doc. 85.)  In that memorandum and order, summary judgment was granted in favor of Defendants as to a number of claims.  However, the court also granted

asserts that he has been denied access to the courts on three occasions and denied the practice of religious freedom.

Before the court is a motion to dismiss and for summary judgment filed on behalf of Defendants.  (Doc. 99.)  For the reasons set forth below, Defendants' motion for summary judgment will be granted.

## I.    **Background**

Set forth below are the allegations and facts relating to Milhouse's access to the courts claims and freedom of religion claims.  The court notes that three months after Defendants filed their second motion for summary judgment, Milhouse filed a motion for discovery, seeking prison policies on the handling of legal mail and the practice of religion, and any related administrative remedy requests filed by him.[4]  (Doc. 121.)  This motion for discovery is untimely, as it was filed well after two motions for summary judgment had been filed and after any period of discovery had already elapsed.

---

Milhouse leave to amend his complaint to state, if possible, an access to the courts claim and a freedom of religion claim.  Presently before the court is Milhouse's amended complaint limited to those claims.

[4] Subsequent to the filing of this motion, Milhouse submitted a number of exhibits containing the relevant administrative remedy requests.  However, it is noted that Defendants concede Milhouse has exhausted his administrative remedies with respect to these claims.  (Doc. 100 at 11.)

A.    **Facts - Access to the Courts Claims**

In his amended complaint, Milhouse provides the following background with respect to his access to the courts claims.  The court notes that for purposes of disposition of the instant motion to dismiss as to these claims, the factual allegations asserted in the amended complaint will be accepted as true and viewed in a light most favorable to Milhouse.

Milhouse asserts that "on approximately June 14, 2009, while assigned to cell 109 Z-block, Plaintiff gave [Officer] Scott D. Blue outgoing legal mail" addressed to the Third Circuit Court of Appeals.  (Doc. 96 at 4.)  He claims that this mail never reached its intended destination.  (*Id.*)  He was not aware of this fact until he received a notice informing him that he had missed a deadline for filing a brief in another case, and "as a direct result" of missing that deadline, his "request for rehearing en banc was denied and he couldn't file a writ of cert to the United States Supreme Court."  (*Id.* at 4-5.)  Attached as an exhibit to Defendants' motion is the docket sheet for the case to which Milhouse is referring.  (Doc. 101 ¶ 1.)

In a separate incident on August 24, 2009, Milhouse "gave [Officer] Manning outgoing legal mail" containing an administrative remedy appeal and addressed to the National Remedy Coordinator, but the "envelope was returned

3

open and the stamps were defaced along with most of the contents missing." (*Id*.)

He further asserts that he "showed" this legal mail to Defendants Bledsoe,

Miorana, Rear, and to a Captain P. Bludworth. (*Id*.) He claims he filed an

administrative remedy request on this issue, which was denied. (*Id*.)

Thereafter, Milhouse asserts that he re-mailed his administrative remedy

appeal on September 3, 2009, along with more appeals, to the Northeast Regional

Director. (*Id*. at 5.) These appeals were denied as untimely on September 28,

2009. (*Id*. at 6.) He does not name any USP-Lewisburg official as receiving this

mail for forwarding to the Northeast Regional Director. (*Id*.)

In his amended complaint, Milhouse also sets forth facts relating to further

incidents involving legal mail on May 4 and 5, 2010, December 28, 2010, and

January 31, 2011. (*See id*. at 6-7.) He does not name any of the named Defendants

in these incidents. (*See id*.) In its January 31, 2011 memorandum and order

addressing Defendants' first motion for summary judgment, the court permitted

Milhouse to file an amended complaint as to the incidents of June 14, 2009, August

24, 2009, and September 3, 2009. (*See* Doc. 85 at 31.) ("the court will deny

Defendants' motion here and allow Milhouse to reassert the claims of denial of

access to the courts as to the three instances specified in his brief in opposition (*see*

Doc. 41 at 6) in an amended complaint"). The court also cautioned Milhouse that

he "should file separate actions as to any Defendants and claims that do not share common legal and factual questions and that do not arise out of the same transactions or occurrences." (Doc. 85 at 36.) Turning to the amended complaint, these later incidents, beginning allegedly in May 2010 and raised here for the first time, occurred at the very least eight months after the 2009 incidents, and none of them relate to the previous incidents or involve any of the named Defendants. Given the court's limitations as to issues raised in the amended complaint, as well as its warning not to raise issues that do not arise out of the same transactions or occurrences, both set forth plainly in January 31, 2011 memorandum and order, the court will dismiss any claims as to the incidents of May 4 and 5, 2010, December 28, 2010, and January 31, 2011, without prejudice to Milhouse filing a separate action raising these claims.

## B. **Facts - Freedom of Religion Claim**

In his amended complaint, Milhouse states the following with respect to his freedom of religion claim: (1) there is no Islamic chaplain for Muslim inmates nor services for Special Management Unit inmates to attend physically nor provided through the radio as other institutional programs, and (2) there is no Islamic celebration after the Ramadan fast, nor special meal as it is for other faiths, nor an Islamic chaplain to discuss the articles of faith. (Doc. 96 at 8.)

Further, as both parties have filed statements of facts, the following facts are undisputed unless where noted. Milhouse has been designated to USP-Lewisburg's Special Management Unit ("SMU"). (Doc. 101 ¶ 6.) Defendants assert that he has chosen not to progress through the SMU program, and therefore remains in Phase One of the four-phase program. (*Id*. ¶ 7.) Milhouse counters that he successfully progressed through several phases in 2010 and 2011, though he does not state how many. (Doc. 128 ¶ 7.) Nevertheless, Defendants further assert that Phase One of the SMU program is primarily a lock-down phase, and thus Milhouse cannot participate in group services. (Doc. 101 ¶ 8.) Milhouse adds that Phases Three and Four are also lock-down phases. (Doc. 128 ¶ 8.)

Milhouse, a Muslim, is allowed to state his religious preference and to make changes of his choosing. (Doc. 101 ¶ 14.) In his locked-down cell, Milhouse can perform the five daily required prayers for Muslims. (*Id*. ¶ 4.) He also has access to a sink which provides for his ritual washing prior to prayer. (*Id*. ¶ 5.) Defendants also assert that Milhouse has access to religious personal property, which can include a prayer rug, Dhikr beads (plastic), a religious medallion and chain (no gold), prayer oil, Kufi, and a copy of the Holy Quran and the Hadith. (*Id*. ¶ 11.) Milhouse states that he does not have access to these items, however, because as an indigent prisoner, they are not available. (Doc. 128 ¶ 11.) Milhouse

6

also has access to a lending library of religious materials and has borrowed items

from the chapel library.  (Doc. 101 ¶ 12.)  Milhouse agrees with this statement, but

adds that he can only receive these materials by submitting request slips, which

take several months to process.  (Doc. 128 ¶ 12.)  Further, USP-Lewisburg's

chaplaincy staff make weekly rounds to the housing units and are available to

speak with an inmate upon request.  (Doc. 101 ¶ 13.)  Milhouse counters that his

cell block does not contain a sign-in book.  (Doc. 128 ¶ 13.)

The last day of Ramadan in 2010 was September 9.  (Doc. 101 ¶ 3.)  In the

SMU, Milhouse is able to participate in the fasting during the month of Ramadan.

(*Id*. ¶ 9.)  Defendants assert that USP-Lewisburg provides a special meal the day

after the end of Ramadan for Muslim inmates, and Milhouse can participate in this

meal.  (*Id*. ¶¶ 2, 10.)  Milhouse counters, however, that USP-Lewisburg

"detract[ed]" from the ceremonial meal by issuing the meal not only to Ramadan

participants, but also to non-Muslim, non-Ramadan participants.  (Doc. 128 ¶ 2.)

He further asserts that there has not been a ceremonial meal for Ramadan

participants at USP-Lewisburg since 2009.  (*Id*. ¶ 10.)

## C.   **Procedural History**

Milhouse filed his original complaint on October 9, 2009.  (Doc. 1.)

However, prior to service of the original complaint, Milhouse filed an amended

complaint on November 2, 2009.  (Doc. 6.)  By order dated December 2, 2009, the

court directed service of the amended complaint on the Defendants named therein.

(Doc. 10.)  Defendants filed a motion to dismiss and for summary judgment on

April 6, 2010.  (Doc. 32.)  Supporting and responsive briefs were also filed.  (*See*

Docs. 38, 41, 56, 59.)

On January 31, 2011, the court issued a memorandum and order granting

Defendants' motion for summary judgment on all the claims raised in the amended

complaint with the exception of Milhouse's allegations relating to an access to the

courts claim and a freedom of religion claim.  (Doc. 85.)  The order directed

Milhouse to file an amended complaint as to those remaining issues.  (*Id*.)

On April 20, 2011, Milhouse filed an amended complaint.  (Doc. 96.)

Thereafter, Defendants filed the instant motion to dismiss and for summary

judgment.  (Doc. 99.)  Milhouse has filed a brief in opposition to this motion.

(Doc. 127.)  Thus, the motion is ripe for disposition.


II.    **Standards of Review**

A.    **Motion to Dismiss**

Defendants have filed a motion which, in part, seeks dismissal of the

complaint on the grounds that Milhouse's complaint fails to state a claim upon

which relief can be granted, as provided by Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  The motion, however, goes beyond a simple motion to dismiss

under Rule 12(b)(6) because it is accompanied by evidentiary documents outside

the pleadings contravening Milhouse's claims.  Rule 12(d) provides as follows:

> If, on a motion under Rule 12(b)(6) or (12)(c), matters outside the
> pleadings are presented to and not excluded by the court, the motion
> must be treated as one for summary judgment under Rule 56.  All
> parties must be given a reasonable opportunity to present all the
> material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  The court will not exclude the evidentiary materials

accompanying Defendants' motion to dismiss because Milhouse has also been

given a reasonable opportunity to present material relevant to the motion.  Thus,

Defendants' motion to dismiss and for summary judgment shall be treated solely as

seeking summary judgment with regard to the remaining claims.

## B.   <u>Motion for Summary Judgment</u>

Summary judgment is proper when the pleadings, the discovery and

disclosure materials on file, and any affidavits or other materials show that there is

no genuine issue as to any material fact and that the movant is entitled to a

judgment as a matter of law.  Fed. R. Civ. P. 56(a)[5] and (c); *accord Saldana v.*

---

[5] *See* Fed. R. Civ. P. 56, Advisory Comm. Note (2010 Amendments) (The frequently
cited standard for summary judgment is now set forth in Rule 56(a) rather than Rule 56(c)(2010).
The Advisory Committee explains that despite the language change, "[t]he standard for granting
summary judgment remains unchanged" and "[t]he amendments will not affect continuing
development of the decisional law construing and applying these phrases.").

*Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.*  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)*.*  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or

circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   Discussion

In their motion for summary judgment, Defendants argue that Milhouse's claims do not set forth a constitutional claim and thus fail to state a claim.  They further argue that Milhouse has failed to comply with the court's January 31, 2011 order with respect to the filing of his amended complaint.  The court will address these arguments by examining Milhouse's claims in turn.

### A.   Access to the Courts

In his amended complaint, Milhouse raises three incidents with respect to his denial of access to the courts.   It is well-settled that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In order to state a claim for denial of this right, Milhouse must plead that he has suffered an "actual injury" arising from the challenged conduct of defendants. *See Lewis v. Casey*, 518 U.S. 343, 349-50 (1996).

### 1. **June 14, 2009**

As stated above, Milhouse claims that on June 14, 2009, he gave Officer Scott D. Blue "outgoing legal mail" addressed to the Third Circuit Court of Appeals. (Doc. 96 at 4.) Further, he claims that "as a direct result" of missing a deadline, his request for a rehearing with the Court of Appeals was denied and he could not file a petition for writ of certiorari with the United States Supreme Court. (*Id*.)

Milhouse fails to state a claim. First, Milhouse does not name any of the Defendants with respect to this claim. Further, Officer Scott D. Blue is not a defendant in this civil action. It is well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.[6] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which plaintiff's claim are based. *Id*. A civil rights complaint must state time, place, and responsible persons. *Id*. As stated in *Rode*,

---

[6] A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See Patton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992).

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Id.* at 1207 (citations omitted).  In light of this well-settled law, the court must conclude that Milhouse has failed to state a claim against any of the named Defendants, as none of them are referenced with respect to the claims.

Moreover, as attached to the instant motion by Defendants, the docket sheet of the Third Circuit case to which Milhouse refers with respect to this claim does not indicate that he missed any deadlines on or around the time of June 2009. (Doc. 100-1 at 26, Ex. 1, Attach. 1.)  Further, the docket also indicates that in that case Milhouse sought and was granted several extensions of time for various reasons.  (Doc. 100-1, Ex. 1, Attach. 1.)  As such, Milhouse has failed to show that he suffered any "actual injury" arising from any alleged interference with his legal mail. *See Lewis*, 518 U.S. at 349-50.

In sum, Milhouse has failed to establish an access to the courts claim here. Thus, summary judgment here will be granted in favor of Defendants.

13

### 2. **August 24, 2009 & September 3, 2009**

As stated above, Milhouse claims that on August 24, 2009, he gave an Officer Manning "outgoing legal mail" addressed to the BOP's National Remedy Coordinator in the Central Office and containing an administrative remedy appeal, but the envelope was returned to him open, with the stamps defaced and most of the contents missing.  (Doc. 96 at 5.)  He claims he "showed" this legal mail to Defendants Bledsoe, Rear, and Miorana, and to a Captain Bludworth, who is not a named Defendant in this action.  (*Id*.)  He also claims that administrative remedy requests with respect to this claim were filed but denied.  (*Id*.)  Lastly, he claims that he remailed the administrative remedy appeals to the Northeast Regional Director, along with other appeals, but the appeals were denied as untimely.  (*Id*. at 6.)  He does not name any specific administrative remedy request or Defendant with respect to the September 3, 2009 mailing.  (*Id*.)

Again, Milhouse fails to state a claim.  First, Milhouse fails to name ten out of the thirteen Defendants with respect to this claim.  As stated above, the Third Circuit has established that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement.  *See Rode*, 845 F.2d at 1207.  Thus, this claim must be dismissed as to those ten Defendants.

14

Second, as to Defendants Bledsoe, Rear, and Miorana, the warden and two assistant wardens, respectively, Milhouse merely asserts that these Defendants were "shown" the opened legal mail.  He does not allege that they were in any way involved in allegedly tampering with that legal mail.  He also does not allege that any of these Defendants had personal involvement in denying his unspecified appeals.  As with personal involvement, it is also well-established that liability in a civil rights action cannot be predicated solely on the doctrine of respondeat superior.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*, 845 F.2d at 1207).  "Supervisors may be held liable under § 1983 for constitutional violations of their subordinates if it is shown that they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional violation.'"  *Tsakonoas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009) (internal citations and quotations omitted).  Here, Milhouse has failed to allege any conduct on the part of these three Defendants that rises to the level of a constitutional violation.

Further, construing the amended complaint as a claim against these Defendants for failing to favorably respond to his complaints and grievances, Milhouse has failed to state a claim.  As a general rule, inmates do not have a constitutional right to a prison grievance system.  *See Jones v. North Carolina*

*Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977); *Speight v. Sims*, 283 F. App'x 880, 881 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")).  Consequently, dissatisfaction with a response to an inmate's grievances does not support a constitutional claim.  *See Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Pryor-El v. Kelly*, 892 F. Supp. 261, 275 (D.D.C. 1995) ("Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison officials' failure to comply with the grievance procedure is not actionable.").  Because civil liability under § 1983 requires personal involvement by a government official in the alleged deprivation of some constitutional right, it is apparent that a mere "allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Greenwaldt v. Coughlin*, 93 Civ. 6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995).  Thus, because Defendants Bledsoe, Rear, and Miorana's only alleged involvement consists of a purported failure to react favorably to Milhouse upon his "showing" them his opened envelope or a failure to respond favorably to his related grievance, this claim must fail because "failure of

16

a prison official to provide a favorable response to an inmate grievance is not a

federal constitutional violation." *Gordon v. Vaughn*, No. CIV. A. 99-1511, 1999

WL 305240, at *2 (E.D. Pa. May 12, 1999).  Because Milhouse has failed to state a

claim against these Defendants, summary judgment will be granted in their favor.

**B.     Freedom of Religion**

In his amended complaint, Milhouse asserts that he has been denied

religious services and a special meal to celebrate the end of Ramadan.  The court

construes Milhouse as claiming that Defendants interfered with his First

Amendment right of free exercise of religion.  Inmates must be given "reasonable

opportunities" to exercise their religious freedom protected by the First

Amendment.  *See Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972).  Milhouse alleges

that Defendants should have provided him with a Muslim chaplain, Muslim

services, or radio programs for Muslims.  He also alleges that Defendants provide

the special meal at the end of Ramadan to all prisoners, thus "detracting" from the

meal which is intended for exclusively for Muslims who had participated in the

Ramadan fasting.  Milhouse fails to name any Defendant with respect to these

claims.  *See Rode*, 845 F.2d at 1207.  Nevertheless, the court finds that the alleged

conduct does not fall within the scope of the Religious Freedom Restoration Act

("RFRA"), 42 U.S.C. § 2000bb, *et seq*., which applies to free exercise of religion

17

claims under the First Amendment raised by prisoners. *See Small v. Lehman*, 98 F.3d 762, 768 (3d Cir. 1996).

In *Small*, the court held that the challenged restraint of freedom of religion does not fall within the scope of RFRA unless the prisoner can establish that a "substantial burden" is placed on his ability to exercise his religious freedom. *Id.* at 767. The interference must be more than an inconvenience. *Id.* Moreover, in *Branch v. Russian*, Civ. No. 00-1728, 2005 WL 1137879 (M.D. Pa. Feb. 1, 2005), the court stated:

> Individuals have a constitutionally protected right to follow the religious teachings and practices of their choice. *Employment Div. v. Smith*, 494 U.S. 872, 881-83, 110 S. Ct. 1595, 108 L. Ed.2d 876 (1990). This right may be limited by law of general applicability, restricting both religious and non-religious conduct, but reasonable accommodations for religious observance may be required in certain circumstances. *Id.*; *see also Wisconsin v. Yoder*, 406 U.S. 205, 214-15, 92 S. Ct. 1526, 32 L. Ed.2d 15 (1972). Particularly in the prison context, where inmates are precluded from engaging in a variety of otherwise permissible activities, officials may be required to provide exemptions from restrictions that place a "substantial burden" on an inmate's adherence to "sincerely held religious beliefs," unless the officials offer compelling reasons for refusing such accommodation. *See* 42 U.S.C. § 2000cc-1(a); *see also Smith*, 494 U.S. 884; *Turner*, 482 U.S. at 89-91.

*Branch*, 2005 WL 1137879, at *7.

In *Branch*, the plaintiff inmate claimed that Pennsylvania's Department of Corrections policy DC-ADM 807, Hygiene and Grooming Policy, violated his

right to free exercise of religion.  The district court found that the plaintiff failed to establish the threshold element of such a claim since he did not explain how long hair affected his religious beliefs and only alleged that he took a vow requiring him to keep long hair.  Thus, the plaintiff did not establish a burden on the exercise of religion.

In the instant case, Defendants argue that Milhouse has not established that a "substantial burden" has been placed on his ability to exercise his religious freedom.  First, with respect to religious services, Milhouse alleges that as a participant in the SMU program, he has been precluded from physically attending group services or listening to services on a radio.  Even assuming that every phase of the SMU is locked down, (*see* Doc. 128 ¶ 8), and Milhouse is precluded from physically attending religious services or listening to services on a radio, it is undisputed that Milhouse has alternative means of worship clearly available to him.  Specifically, Milhouse can perform the five daily required prayers for Muslims in his cell.  He has access to a sink which can provide for ritual washing prior to prayer.  He has access to the lending library of religious materials and has borrowed items from the chapel library.  He has access to USP-Lewisburg's chaplaincy staff.  He has access to religious personal property, which can include a prayer rug, Dhikr beads, a religious medallion and chain, prayer oil, Kufi, and a

copy of the Holy Quran and the Hadith.  While Milhouse asserts that these items

are not available to him because he is indigent, this fact certainly does not suggest

that prison officials are required to provide him with these items, especially while

alternatives remain viable, such as the ability to ritually wash and pray in his cell

and borrow religious materials from the library and chapel.  While the SMU

lockdown policy precluding inmates from attending group religious services

undoubtedly imposes restrictions on Milhouse's ability to engage in activities

relating to a Muslim group, Milhouse retains sufficient alternative means of

studying and practicing doctrines distinct to his religion.  *See Fraise v. Terhune*,

283 F.3d 506, 519-20 (3d Cir. 2002) (upholding a prison policy that imposes

restrictions on the ability of inmates in restrictive custody to engage in activities

related to a religious group when the policy does not foreclose all alternative

avenues of practice).  Thus, Milhouse has failed to meet the substantial burden test

with respect to his claim regarding the religious services.

Next, with respect to the special meal served at the end of Ramadan,

Milhouse does not allege that he was denied this religious meal, rather he simply

disagrees with officials providing the components in that meal to non-Muslim

inmates.  However, Milhouse does not assert that Defendants' conduct of

providing the meal to non-Muslim inmates has inhibited or curtailed his ability to

express adherence to his Muslim religion and its beliefs.  The fact that the

components of the special meal are served to non-Muslim inmates does not

"detract" from Milhouse's participation in this meal celebrating the end of

Ramadan fasting.  Moreover, Milhouse has not claimed that prison officials served

him food at this meal that does not conform to his religious dietary restrictions.

Thus, Milhouse has failed to meet the substantial burden test with respect to his

claim regarding the special meal.

Because Milhouse has failed to meet the substantial burden test with respect

to both of his freedom of religion claims, summary judgment will be granted in

favor of Defendants.


IV.   **Conclusion**

For the reasons set forth herein, Milhouse's access to the courts claims

relating to incidents on May 4 and 5, 2010, December 28, 2010, and January 31,

2011, will be dismissed without prejudice to Milhouse's right to assert them in a

separate action.  Further, the motion for summary judgment will be granted in

favor of Defendants as to Milhouse's access to the courts claims relating to

incidents on June 14, 2009, August 24, 2009, and September 3, 2009.  In addition,

the motion for summary judgment will be granted in favor of Defendants as to

Milhouse's claims of denial of religious freedom.

An appropriate order will issue.

   s/Sylvia H. Rambo          
United States District Judge

Dated:  February 23, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREEM HASSAN MILHOUSE,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-09-01953** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **B.A. BLEDSOE,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

# O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) Plaintiff's access to the courts claims related to incidents alleging

occurring on May 4 and 5, 2010, December 28, 2010, and January 31, 2011, are

**DISMISSED** without prejudice to Plaintiff raising these claims in a separately-

filed action.

2) Defendants' motion to dismiss (Doc. 99) as to Plaintiff's access to the

courts claims related to incidents occurring on June 14, 2009, August 24, 2009, and

September 3, 2009, is **GRANTED**, and Plaintiff's claims are **DISMISSED** with

prejudice.

3) Defendants' motion for summary judgment (Doc. 99) as to Plaintiff's

claims of a denial of religious freedom is **GRANTED** in favor of Defendants.

4) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants and against Plaintiff.

5) Plaintiff's motion for discovery (Doc. 121) is **DENIED**.

6) Plaintiff's amended motion for a preliminary injunction (Doc. 106) is **DENIED** without prejudice to Plaintiff's right to file a separate action, as the claims therein have either been previously dismissed from this case or are beyond the scope of this case as set forth by the court in its memorandum and order dated January 31, 2011.  (*See* Doc. 85.)

7) The Clerk of Court is directed to **CLOSE** this case.

s/Sylvia H. Rambo<br>United States District Judge

Dated:  February 23, 2012.